# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

**LEE REDDIX**                                                                          **PLAINTIFF**

**v.**                                        **Case No. 2:17-cv-00029 KGB**

**ARKANSAS DEPARTMENT OF**
**WORKFORCE SERVICES**                                                           **DEFENDANT**

## OPINION AND ORDER

Before the Court is defendant Arkansas Department of Workforce Services' ("ADWS")

motion for summary judgment (Dkt. No. 10). In his complaint, plaintiff Lee Reddix alleges that

ADWS subjected him to unlawful discrimination on the basis of race and gender in violation of

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the omnibus

Civil Rights Act of 1991 ("Title VII");[1] 42 U.S.C. § 1981; 42 U.S.C. § 1983; the Equal Protection

Clause of the Fourteenth Amendment to the Constitution of the United States; and the Arkansas

Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, ("ACRA") (Dkt. No. 1, at 1). ADWS

moves for summary judgment on each of these claims. Mr. Reddix has responded to the motion

(Dkt. No. 17). Also before the Court is ADWS's motion to deem admitted and for dismissal (Dkt.

No. 13) and Mr. Reddix's response in opposition. For the following reasons, the Court denies

ADWS's motion to deem admitted and for dismissal and grants ADWS's motion for summary

judgment.

---

[1] In his complaint, Mr. Reddix also cites the Civil Act of 1866 (Dkt. No. 1, at 1). The
Court understands this to be a reference to the Civil Rights Act of 1866, which was amended by
the Civil Rights Act of 1991.

# I. Factual And Procedural Background

ADWS filed a statement of undisputed material facts (Dkt. No. 11). The Court notes that Mr. Reddix did not file a separate statement of material facts, which is required by Local Rule 56.1(b) of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Mr. Reddix's response to ADWS's motion to dismiss appears to be a response to ADWS's statement of undisputed material facts (Dkt. No. 19), but that response appears to deny all of ADWS's statements of undisputed material facts with little to no explanation for the denials and with no cites to record evidence in support of the denials (*Id.*). Pursuant to Local Rule 56.1, all material facts set forth in the statement filed by the moving party shall be deemed admitted unless controverted by the statement filed by the non-moving party. Further, failure to support or address properly the moving party's assertion of fact can result in the fact being considered as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). Unless otherwise noted, the following facts are taken from ADWS's statement of undisputed material facts.

Mr. Reddix was at the time ADWS filed its motion employed at ADWS (Dkt. No. 11, ¶ 1). He was initially hired in March 2012 as a Temporary Assistance for Needy Families ("TANF") supervisor (*Id.*, ¶ 2; Dkt. No. 10-5, at 1). According to the affidavit of Judy Duncan, a Caucasian female, she was the Area Operations Chief at that time (Dkt. No. 10, Ex. B, ¶ 3).

At all relevant times, Ms. Duncan has been employed at ADWS (Dkt. No. 11, ¶ 7). She has worked for ADWS for 38 years (*Id.*). Presently, she is employed as the Area Operations Chief for Area III (*Id.*). She has held that position for 10 years (*Id.*, ¶ 8). Prior to that, Ms. Duncan worked as a Local Office Manager in the Walnut Ridge/Newport office for four years (*Id.*). She also served in a supervisory capacity for several years (*Id.*). Ms. Duncan served on Mr. Reddix's

interview panel (*Id.*, ¶ 3).  She hired Mr. Reddix as a TANF supervisor and, on January 20, 2013, promoted Mr. Reddix to the position of Local Office Manager (Dkt. No. 10, Ex. B, ¶ 3; Dkt. No. 10, Ex. E, at 1).  Artee Williams is the former Director of ADWS and an African-American male; Mr. Reddix's promotion to Local Office Manager was approved by Mr. Williams (Dkt. No. 11, ¶¶ 10, 11).

Mr. Reddix was subject to probationary periods during his employment as both a TANF supervisor and Local Office Manager (*Id.*, ¶ 14).  During this time, Mr. Reddix had difficulty with work performance, and his six-month probationary period had to be extended by three additional months (Dkt. No. 11, ¶ 15).  During his probationary performance reviews, it was documented that Mr. Reddix needed improvement in the areas of:  (1) job knowledge and skill and (2) decision making (*Id.*).  His performance review also demonstrated that he struggled in the area of interpersonal relations (*Id.*).  He was advised that he needed to improve his knowledge of ADWS's three major programs:  TANF, Unemployment Insurance, and Job Services (*Id.*).  Ms. Duncan encouraged Mr. Reddix to improve his skills in these areas (*Id.*, ¶ 16).  Mr. Reddix did improve his work performance somewhat (*Id.*, ¶ 17).

However, during his time at ADWS, Ms. Duncan received complaints from staff and clients about Mr. Reddix (Dkt. No. 10, Ex. B, ¶ 4).  For example, TANF clients reported that Mr. Reddix threatened to terminate their benefits if they did not perform favors for him (Dkt. No. 11, ¶ 18).  Staff members also reported that they were uncomfortable being alone with Mr. Reddix (*Id.*).  While employed with ADWS, Mr. Reddix worked part-time as a police officer (*Id.*).  He was counseled several times about performing his part-time job duties during his ADWS work hours (*Id.*).

Mr. Reddix only filed one complaint during his time as the Local Area Manager (*Id.*, ¶ 24). He complained that Ms. Duncan was not permitting him to do his job because Ms. Duncan encouraged employees to report directly to her when things were not going well in the Helena ADWS office (*Id.*). Mr. Reddix characterized this conduct as "hostile work environment" harassment (Dkt. No. 10, Ex. A, at 118).

In January 2014, Mr. Williams made the decision to terminate Mr. Reddix from his position as a Local Area Manager (Dkt. No. 11, ¶ 19). Ms. Duncan did not make the decision to terminate Mr. Reddix (*Id.*). She merely communicated the decision to Mr. Reddix (*Id.*, ¶ 21).

Before working at ADWS, Mr. Reddix filed an employment discrimination lawsuit against a former employer (*Id.*, ¶ 22; Dkt. No. 10, Ex. E). Mr. Reddix's prior lawsuit was not a factor in his termination from ADWS in 2014 (Dkt. No. 11, ¶ 23). ADWS was aware of Mr. Reddix's prior lawsuit before he was hired at ADWS because someone sent a copy of paperwork regarding the lawsuit to the agency anonymously (*Id.*).

Mr. Reddix believed that his termination from ADWS was improper and filed a grievance concerning his termination (*Id.*, ¶ 26). ADWS has explained in regard to this grievance process that, subsequent to Mr. Reddix's termination on January 20, 2014, Mr. Reddix filed a grievance "alleging that he had been unjustly terminated based on lack of due process and false accusations against him." (Dkt. No. 10, Ex. E, at 1-2). According to ADWS, "[a]t no point in the grievance process did [Mr. Reddix] file any complaint, formal or informal, within ADWS, nor to the knowledge of ADWS to the [EEOC] alleging any Title VII or Civil Rights violations." (*Id.*, at 2).

On April 24, 2014, ADWS and Mr. Reddix entered into a settlement agreement regarding the grievance (Dkt. No. 11, ¶ 27). ADWS denied that Mr. Reddix's termination was unlawful or improper (*Id.*). According to the settlement agreement, Mr. Reddix was rehired at a grade level

equivalent to the position he held prior to his promotion as a Local Office Manager, among other stipulations (*Id.*, ¶ 28). In exchange, Mr. Reddix agreed that he would not file a complaint or initiate any action in state or federal court in connection with his January 2014 termination (*Id.*, ¶ 29).

Upon reinstatement, Mr. Reddix was classified as a Program Field Audit Specialist (Dkt. No. 11, ¶ 30; Dkt. No. 10, Ex. E, at 2). Mr. Reddix believes it was Mr. Williams's decision to reinstate him (*Id.*, ¶ 31). ADWS's current director, Darryl Bassett, was not involved in Mr. Reddix's termination or reinstatement and was not employed at the agency at the time Mr. Reddix was terminated and reinstated (*Id.*, ¶ 32). Following his reinstatement, Mr. Reddix did not have any contact with Ms. Duncan (*Id.*, ¶ 34). Mr. Reddix started off with a clean slate with Ms. Duncan and Ronald Snead, Deputy Director of the ADWS (*Id.*, ¶ 35). Mr. Reddix admits that he harbored no ill feelings about Ms. Duncan or Mr. Snead (*Id.*).

In or around September 2015, the Helena office had a vacant Field Manager II position (Dkt. No. 11, ¶ 36). Ms. Duncan was the hiring official and received three applications for the position (*Id.*). Only the most qualified applicants were interviewed (*Id.*, ¶ 37). Based on Ms. Duncan's past experience with Mr. Reddix in a manager's position, she determined that he was not the best qualified for the position (*Id.*). Mr. Reddix's struggles with job performance and previous complaints from clients and staff were also factors (*Id.*).

Ms. Duncan interviewed only Delois Hare, an African-American female, for the position (*Id.*, ¶ 38). Ms. Hare was subsequently hired (*Id.*). Ms. Hare was the best qualified applicant (Dkt. No. 11, ¶ 39). She had worked for ADWS for approximately 36 years and had worked her way up through the agency (*Id.*). Of that time, she had at least six years of experience as a Local Office Manager in the Helena office—the exact position for which Ms. Duncan was interviewing (*Id.*).

Mr. Reddix only had one-year of experience as a Local Office Manager at ADWS, from January 20, 2013, until January 10, 2014 (*Id.*, ¶ 40; Dkt. No. 10, Ex. E, at 1).

According to the affidavit of Ms. Duncan, "[n]ot all applicants are selected for interviews." (Dkt. No. 10, Ex. B, ¶ 6). The decision not to interview Mr. Reddix was not related to his gender, as a male, or race, as an Africa-American (Dkt. No. 11, ¶ 42). A female candidate was also not selected for an interview, and the applicant who was hired for the position is an African-American (*Id.*).

According to ADWS, during this period of employment, Mr. Reddix "raised concerns about being asked to perform home visits by himself." (Dkt. No. 10, Ex. E, at 3). In response, Ms. Duncan "explained to [Mr. Reddix] that this was done to protect him from similar situations occurring that in the past led to harassment allegations against him." (*Id.*). "[ADWS] [m]anagement felt that given his physical stature and capabilities and training as a certified law enforcement officer, he could accomplish visits alone." (*Id.*). On November 12, 2015, "[ADWS] [m]anagement considered his concerns and rescinded the decision that he was to conduct home visits by himself in an email from [Ms.] Duncan." (*Id.*).

Throughout his employment with ADWS and prior to initiating this lawsuit, Mr. Reddix filed only one Charge with the Equal Employment Opportunity Commission ("EEOC") against ADWS (Dkt. No. 10-4; Dkt. No. 11, ¶ 44). Mr. Reddix filed that Charge on February 13, 2016 (Dkt. No. 1, Ex. A). On the Charge, Mr. Reddix checked the boxes for discrimination based on sex and retaliation only (*Id.*).

Mr. Reddix stated the following under the section on the Charge for the particulars of the discrimination:

> I was rehired by the above named employer in May 2014 in the position of Program Field Audit Specialist. I was reinstated with my former pay after being discharged

from the position of Local Office Manager in January 2014. On or about September 24, 2015 I was denied the opportunity to interview for the position of Field Manager II despite having previously worked in the job and being qualified for it. Since my reinstatement I have been and continue to be subjected to harassment and a difference in the terms of my employment.

I was not given a reason why I was denied an opportunity to interview for the Field Manger II position.

I believe I have been and continue to be harassed and treated differently because of my sex (male) and denied the opportunity to be properly classified in my job in retaliation for filing a previous complaint and opposing practices made unlawful in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*).

In the Charge (493-2016-00377), Mr. Reddix only complains of gender discrimination and retaliation (Dkt. No. 11, ¶ 45). He does not mention or complain of race discrimination (*Id.*). The alleged employment action that Mr. Reddix references is the September 24, 2015, failure to interview allegation (*Id.*, ¶ 46). On November 30, 2016, the EEOC mailed to Mr. Reddix a dismissal and notice of rights letter, which gave him 90 days to file a lawsuit under Title VII (Dkt. No. 1-2, Ex. B).

Mr. Reddix alleges in his complaint filed in this action "that on or around June 2016, [Ms.] Duncan retired from the agency as Area Operations Chief." (Dkt. No. 1-2, ¶ 22). Once the position became open, Mr. Reddix contends that he "and three other African-American male agency employees applied for [Ms.] Duncan's position of Area Operations Chief." (*Id.*). Mr. Reddix further alleges that he "was not selected for an interview and the other African-American males were not hired for the position." (*Id.*). Mr. Reddix claims that "[Ms.] Duncan reapplied for the position and was rehired." (*Id.*).

Mr. Reddix also alleges that, at an unspecified time, he "was instructed to use his personal vehicle for agency business and subsequently written up for refusal to use his personal vehicle to

conduct agency business." (Dkt. No. 1-2, ¶ 23). Mr. Reddix claims that a "female employee used an agency vehicle for personal business and received no write-ups." (*Id.*).

Mr. Reddix filed his lawsuit on February 28, 2017 (Dkt. No. 1). On June 1, 2018, ADWS filed a motion for summary judgment, with a separate statement of facts and brief in support (Dkt. Nos. 10, 11, 12). On June 3, 2018, ADWS filed a motion to deem admitted and for dismissal (Dkt. No. 13). The Court communicated informally with counsel regarding the status of Mr. Reddix's response to ADWS's motion for summary judgment and motion to deem admitted and for dismissal. In response, counsel for Mr. Reddix filed a motion for extension of time, which this Court granted (Dkt. Nos. 14, 16). On July 31, 2018, Mr. Reddix responded to the motion for summary judgment (Dkt. No. 17). On August 1, 2018, Mr. Reddix responded to the motion to deem admitted and for dismissal (Dkt. No. 19). The Court has considered Mr. Reddix's response and filings when evaluating ADWS's pending motion for summary judgment.

## II.    Standard Of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of

material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.     Discussion

Mr. Reddix alleges claims under several state and federal statutes. ADWS moves for summary judgment on all of Mr. Reddix's claims. Mr. Reddix alleges that ADWS subjected him to unlawful discrimination on the basis of race and gender in violation of Title VII, § 1981, § 1983, the Equal Protection Clause of the Fourteenth Amendment, and the ACRA. ADWS asserts that Mr. Reddix's claims under the Fourteenth Amendment and the ACRA pursuant to § 1983 and his § 1981 claims are barred by sovereign immunity. ADWS also asserts that several of Mr. Reddix's claims under Title VII should be dismissed based on a failure to exhaust administrative remedies. Finally, ADWS contends that there is no genuine issue of material fact with respect to Mr. Reddix's remaining claims under Title VII. For the following reasons, the Court grants ADWS's motion for summary judgment (Dkt. No. 10).

### A.     Sovereign Immunity

The Court will first address ADWS's arguments concerning sovereign immunity. "Sovereign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). ADWS moves for summary judgment against Mr. Reddix's claims under the Fourteenth Amendment and the ACRA filed pursuant to § 1981 and § 1983 based on sovereign immunity. For the following reasons, the Court concludes that Mr. Reddix's claims under the Fourteenth Amendment and the ACRA pursuant to § 1981 and § 1983 are barred by sovereign immunity.

### 1.   Claims Under 42 U.S.C. § 1981 and § 1983

ADWS contends that Mr. Reddix's claims under §1981 and § 1983 are barred by sovereign immunity pursuant to the Eleventh Amendment to the United States Constitution.  ADWS argues that, as an instrumentality of the State of Arkansas, it is immune from claims brought pursuant to § 1981 and § 1983.  Based on his claims under the ACRA, § 1981, and § 1983, Mr. Reddix seeks monetary damages in the form of back pay and benefits that he would have attained absent unlawful discrimination (Dkt. No. 1-2, at 8).   Mr. Reddix also seeks this Court to enjoin permanently ADWS and its agents, successors, officials, and employees from engaging in the discriminatory policies and practices alleged by Mr. Reddix (*Id.*).

Section 1981 prohibits racial discrimination in all phases and incidents of a contractual relationship.  *Jones v. McNeese*, 675 F.3d 1158, 1160 (8th Cir. 2012) (internal quotations omitted) (citing *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 468 (8th Cir. 2009) (en banc)).  When raised directly against a state actor, a § 1981 claim must be brought under § 1983.  *Lockridge v. Bd. of Trs. of the Univ. of Ark.*, 315 F.3d 1005, 1007 (8th Cir. 2003) (en banc).  Therefore, § 1983 provides the gateway for Mr. Reddix's § 1981 claims.

The Eleventh Amendment bars any suit against a state in federal court unless the state has consented to suit or Congress has unambiguously abrogated the state's Eleventh Amendment immunity.  *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54-56 (1996).  Congress did not abrogate Arkansas' Eleventh Amendment immunity when it enacted § 1981 and § 1983.  *See Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005) (regarding § 1981); *Burk v. Beene*, 948 F.2d 489, 492-93 (8th Cir. 1991) (regarding § 1983).   In addition, the State of Arkansas has not consented to suit for the purposes of the Eleventh Amendment.  *Burk*, 948 F.2d at 493.  "The Eleventh Amendment provides states, and state agencies[,] . . . with immunity not only from suits

brought by citizens of other states, but also from suits brought by their own citizens." *Doe v.*
*Nebraska*, 345 F.3d 593, 597 (8th Cir. 2003) (internal citations omitted). The Eleventh
Amendment bars suit against "'the state or one of its agencies or departments' . . . whether the
relief sought is legal or equitable." *Papasan v. Allain*, 478 U.S. 265, 276 (1986) (quoting
*Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984)) (internal citations
omitted).

As an agency of the State of Arkansas, ADWS is protected from suit in federal court under
the Eleventh Amendment. Mr. Reddix's complaint names ADWS as the only defendant in this
case (Dkt. No. 1, ¶ 6). Mr. Reddix did not name as defendants any officials or employees in their
official or individual capacity in his complaint. Therefore, Mr. Reddix's complaint is limited to
his claims against ADWS, an agency of the State of Arkansas (Dkt. No. 1, ¶ 6). Under these
circumstances, the State of Arkansas has not consented to suit, and Congress did not abrogate
Arkansas' immunity. Therefore, the Court finds that Mr. Reddix's Fourteenth Amendment claims
filed against ADWS pursuant to § 1981 and § 1983 are barred by the Eleventh Amendment. The
Court grants ADWS summary judgment on Mr. Reddix's § 1981 and § 1983 claims.

### 2.    Claims Under Arkansas Civil Rights Act

As to Mr. Reddix's claims under the ACRA, ADWS contends that it is entitled to sovereign
immunity. ADWS argues that the Arkansas Constitution specifically bars claims against the State
of Arkansas and its agencies, including ADWS. ADWS further argues that the ACRA expressly
does not waive the sovereign immunity of the State of Arkansas.

"The ACRA provides a cause of action for damages for 'the deprivation of any rights. . .
secured by the Arkansas Constitution' by any person acting under color of state law," and "further
provides that, in construing this section, 'a court may look for guidance to state and federal

decisions interpreting . . . 42 U.S.C. § 1983.'" *Smith v. Insley's Inc.,* 499 F.3d 875, 882 (8th Cir. 2007) (quoting Ark. Code Ann. § 16–123–105).

"A state may waive its immunity either by explicitly specifying its intention to subject itself to suit or by voluntarily participating in federal spending programs where Congress expressed a clear intent to condition receipt of federal funds on a state's consent to waive its sovereign immunity." *Doe*, 345 F.3d at 597. The Arkansas Constitution specifically states that "[t]he State of Arkansas shall never be made defendant in any of her courts." Ark. Const. Art. 5 § 20. Suits against Arkansas are also prohibited under the ACRA. Ark. Code Ann. 16-123-104 ("[n]othing in this subchapter shall be construed to waive the sovereign immunity of the State of Arkansas."); *see also Simmons v. Marshall*, 255 S.W.3d 838, 841-42 (Ark. 2007).

Mr. Reddix's complaint names ADWS, an agency of the State of Arkansas, as the only defendant in this case. Because the Arkansas Constitution grants sovereign immunity to the State of Arkansas and its agencies, and the ACRA does not abrogate that sovereign immunity, the Court grants summary judgment in favor of ADWS on Mr. Reddix's ACRA claims against ADWS based on sovereign immunity.

### B. Administrative Exhaustion

The Court will next address the issue of administrative exhaustion with regard to Mr. Reddix's claims under Title VII. ADWS contends that Mr. Reddix failed to exhaust his administrative remedies for several of his Title VII claims including: job reclassification allegations from May 2014; race and gender discrimination allegations dating to June 2016 and relating to interviews for and the selection of the position of Area Operations Chief; and gender harassment and hostile work environment allegations after the June 2016 interview incident. ADWS argues that Mr. Reddix's claims relating to job reclassification that occurred on or around

May 2014 were not timely presented to the EEOC in the Charge. ADWS also argues that Mr. Reddix's claims for race discrimination were not exhausted because he failed to check the box for discrimination based on race and did not mention racial discrimination in the description section of the Charge he filed. Finally, ADWS argues that Mr. Reddix's claims for gender harassment and hostile work environment that purportedly occurred around June 2016 took place after Mr. Reddix filed his February 13, 2016, Charge and, therefore, have not been exhausted.

In his complaint, Mr. Reddix alleges that in June 2016, after Ms. Duncan retired, he and three other African-American males applied for Ms. Duncan's position of Area Operations Chief (Dkt. No. 1-2, ¶ 22). Mr. Reddix further alleges that, even though he and the other three Africa-American male applicants met the qualifications for the position, Ms. Duncan was rehired for the position (*Id.*). Mr. Reddix alleges that these actions by ADWS constitute racial and gender discrimination (*Id.*).

Mr. Reddix also alleges in his complaint that he was subjected to harassment and hostile work environment because he was written up for refusing to use his personal vehicle to conduct agency business, while a female employee used an agency vehicle for personal business and received no write-ups (*Id.*, ¶ 23). Mr. Reddix further alleges that, despite his request not to conduct home visits with female clients because such visits made him feel uncomfortable, Ms. Duncan stated that he had to make such visits alone (*Id.*). In his complaint, Mr. Reddix does not allege when this alleged harassment occurred (*Id.*). In ADWS's letter submitted in response to Mr. Reddix's Charge, ADWS states that the incident regarding home visits occurred in October 2015 (Dkt. No. 10-5, at 3). In the Charge, Mr. Reddix alleges that he was reinstated in May 2014 as a Program Field Audit Specialist, with the same income as before, after being discharged as a Local Office Manager in January 2014 (Dkt. No. 1, Ex. A).

Before bringing suit under Title VII an aggrieved party must exhaust his administrative remedies. *See* 42 U.S.C. § 2000e-5(b), (e)(1). In order to exhaust his administrative remedies under Title VII, "[a] claimant must timely file an administrative charge with the EEOC." *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). Under Title VII, plaintiff must file an administrative charge within 180 days of the alleged discriminatory incident. 42 U.S.C. § 2000e-5(e)(1).

Generally, because each incident of discrimination or retaliation is a "discrete act," an employee must exhaust the administrative process for each discrete act for which he or she seeks to bring a claim. *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672 (8th Cir. 2006). The plaintiff's charges must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Cottrill*, 443 F.3d at 634 (quoting 29 C.F.R. § 1601.12(b)). "If the EEOC gives the individual a right-to-sue letter following the EEOC investigation, the charge limits the scope of the subsequent civil action because the plaintiff may [only] seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Id.* (internal citation and quotation omitted). "Permitting claims to be brought in court which are outside the scope of the EEOC charge would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Id.*

The Eighth Circuit has determined that, where alleged discriminatory or retaliatory conduct has occurred after an EEOC charge has been filed, "[a] plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are *like or reasonably related to* the administrative charges that were timely brought." *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986) (emphasis added). "'We do not require that subsequently-filed lawsuits mirror the

administrative charges' as long as 'the sweep of any subsequent judicial complaint' is no broader than 'the scope of the EEOC investigation which could reasonably be expected to grow out of the charge' filed in the EEOC complaint." *Wedow*, 442 F.3d at 674 (quoting *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004)).

The "like or reasonably related" standard has been narrowed based largely on the reasoning of the Supreme Court in *National Railroad Passenger Corporation v. Morgan*, in which the Court determined that a discrete act of discrimination constitutes a separate actionable employment practice and starts a new clock for filing charges based on it. 536 U.S. 101, 113-14 (2002); *see Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 852 (8th Cir. 2012). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114. Only discrete acts that occurred between 180 days prior to the filing of the Charge and the day Mr. Reddix filed the Charge are actionable. *See Morgan*, 536 U.S. at 114.

Although a plaintiff will be considered to have exhausted his administrative remedies as to allegations that are like or reasonably related to the substance of charges exhausted in his administrative EEOC charge, *Williams v. Little Rock Mun. Water Works*, 218 F.3d 218, 222 (8th Cir. 1994), the plaintiff's allegations must be sufficient to put the employer on notice of the conduct complained of and the general basis of the claim, *Fair v. Norris*, 480 F.3d 865, 866-67 n.2 (8th Cir. 2007).

### 1.    Race Discrimination

For his claims based on race discrimination under Title VII, Mr. Reddix failed to exhaust his administrative remedies. Mr. Reddix did not check the box labeled "race" on the Charge under

the section stating the basis of the alleged discrimination (Dkt. No. 1, Ex. A). Also, in the description section of his Charge, Mr. Reddix states that he was harassed based on gender, but he makes no mention of race (*Id.*). In his complaint, Mr. Reddix discusses racial discrimination as it relates to his failure to promote claim regarding the June 2016 interview for and selection of the position of Area Operations Chief (Dkt. No. 1, ¶ 22). Mr. Reddix filed his Charge on February 13, 2016, five months before the June 2016 allegations (Dkt. No. 1, Ex. A). The Court finds that Mr. Reddix failed to put ADWS on notice of any allegations of failure to promote based on alleged race discrimination because he failed to mention race in the Charge and failed to file a second Charge or amend his Charge after the June 2016 incident. For these reasons, the Court grants summary judgment to ADWS on Mr. Reddix's claims of race discrimination under Title VII for failure to exhaust.

### 2. Gender Discrimination

In his complaint, Mr. Reddix makes a failure to promote claim based on gender discrimination regarding the June 2016 interviewing for and selection of the position of Area Operations Chief (Dkt. No. 1, ¶ 22). Mr. Reddix also makes a gender discrimination claim when he alleges that, prior to October 2015, he was required to report to a female supervisor that was one classification level below him (*Id.*, ¶ 20). In the Charge, Mr. Reddix states that he was harassed and treated differently because he is a male, since he was reinstated in May 2014 (Dkt. No. 1, Ex. A).

For his claims based on discrete acts of gender harassment after the Charge was filed on February 13, 2016, Mr. Reddix also failed to exhaust his administrative remedies. Mr. Reddix did check the box for gender discrimination on his Charge (Dkt. No. 1, Ex. A). He also states in the Charge that he was subjected to harassment based on his gender (*Id.*). However, Mr. Reddix's

claims for harassment relating to the June 2016 interview and hiring process occurred allegedly five months after Mr. Reddix filed the Charge with the EEOC. He never filed a second Charge or an amended Charge to raise these issues. Mr. Reddix's Charge of gender discrimination relating to the June 2016 interview process is a failure to promote claim that is a discrete act of discrimination and constitutes a separate actionable employment practice, which starts a new clock for filing charges based on it. *See Morgan*, 536 U.S. at 113-14. For this reason, the Court grants summary judgment to ADWS on Mr. Reddix's claims based on gender harassment arising from acts that occurred after February 13, 2016, including but not limited to the allegations regarding the June 2016 interview and selection process, because these claims were not administratively exhausted.

Mr. Reddix also alleges that, at some time prior to October 2015, he was assigned to a female supervisor who was one classification level lower than he was at the time (Dkt. No. 1, ¶ 20). In the response letter to the Charge, ADWS states that, on July 6, 2015, Mr. Reddix "was temporarily assigned under the supervision of Ms. Yolanda Williams, C-115, due to his prior supervisor from Central Office, Mr. Franklin Holbrook, being reassigned." (Dkt. No. 10, Ex. E, at 2). During this time, Mr. Reddix had a classification level of C-116 (*Id.*). Based on the record before the Court, the Court concludes the events about which Mr. Reddix now complains occurred on or about July 6, 2015, and that Mr. Reddix did not bring an EEOC Charge regarding the alleged harassment within 180 days from July 6, 2015. For this reason, the Court grants summary judgment in favor of ADWS on Mr. Reddix's gender harassment claims based on his alleged reporting to a female supervisor at a lower classification because those claims were not administratively exhausted.

### 3.    Job Reclassification

For his claims based on job reclassification allegations from May 2014, the Court finds that Mr. Reddix did not exhaust timely his administrative remedies.  In the Charge, Mr. Reddix mentions that, when he was reinstated in May 2014 at ADWS, he was reclassified and received the same income as he did before he was discharged in January 2014 (Dkt. No. 1, Ex. A).  Mr. Reddix further alleges in the Charge that he has "been and continue[s] to be . . . denied the opportunity to be properly classified in [his] job in retaliation for filing a previous complaint and opposing practices made unlawful in violation of Title VII . . . ."  (Dkt. No. 1, Ex. E).  In his complaint, Mr. Reddix alleges that, when he was reinstated in May 2014, he never received proper training for the position of Program Field Audit Specialist and never worked in such a capacity (Dkt. No. 1-2, ¶ 12).  Mr. Reddix further alleges that he was performing the work of a Temporary Assistant for Needy Family Outreach and was employed at a C116 pay-grade level (*Id.*).

Any claims based on Mr. Reddix's reclassification after he was reinstated would have occurred prior to the 180-day window from the date of Mr. Reddix's Charge—August 17, 2015, to February 13, 2016.  Therefore, the Court finds that ADWS is entitled to summary judgment on any claims based on Mr. Reddix's reclassification in May 2014 because those claims were not brought to the EEOC timely and were not administratively exhausted.

However, Mr. Reddix also alleges that, on or around October 2015, he was reassigned to the Helena Office and Ms. Duncan assigned him duties that were not in accordance with his job title of Program Field Audit Specialist (Dkt. No. 1, ¶ 19).  Because Mr. Reddix alleges in his complaint that this reclassification occurred in October 2015, and he states in the Charge that he was denied the opportunity to be properly classified in his job based on retaliation, the Court

determines he has exhausted his claims for discrimination and retaliation based on reclassification regarding the allegations of October 2015.

### 4. Hostile Work Environment

ADWS also argues that Mr. Reddix's claim for hostile work environment was not exhausted. Mr. Reddix alleges that, since applying for the position of Area Operations Chief in June 2016, he has continued to be subjected to harassment and a hostile work environment (Dkt. No. 1, ¶ 23). This Court acknowledges that hostile work environment claims are treated differently and are not generally subject to the "discrete act" rule, but even hostile work environment claims have limits regarding the alleged discriminatory acts that will be deemed exhausted. *See, e.g., Wilkie v. Dept of Health and Human Servs,* 638 F.3d 944 (8th Cir. 2011) (examining the "discrete act" rule in relation to a hostile work environment claim and determining that a dissimilar complaint was not exhausted). Hostile environment claims are not barred "so long as all acts which constitute the claim are part of the same unlawful employment practice . . . ." *Morgan*, 536 U.S. at 122. Stated differently, any acts that occur after a Charge is filed that are "so similar in nature, frequency, and severity . . . must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to the action." *Rowe v. Hussmann Corp.*, 381 F.3d 775, 781 (8th Cir. 2004).

Plaintiffs may not bring claims to court that are outside the scope of their EEOC Charges because to do so "would circumscribe the EEOC's investigatory and conciliatory role and deprive the charged party of notice of the charge." *Cotrill*, 443 F.3d at 634. Like other courts in this district, this Court concludes that if the EEOC and the charged party had notice of a claim that is not necessarily explicit in an EEOC Charge, then that implicit Charge should be considered exhausted. *See Williams v. Asbury Automotive Group, Inc.*, 998 F. Supp. 2d 769, 778 n.6 (E.D.

Ark. 2014) (finding that a constructive discharge allegation was reasonably related to plaintiff's EEOC charge because defendant addressed constructive discharge in response to the EEOC charge).

For Mr. Reddix's claims based on hostile work environment, the Court finds that he did not exhaust his administrative remedies.  In the Charge, Mr. Reddix states that, prior to filing the Charge, and at the time he filed the Charge, he was subjected to gender harassment (Dkt. No. 1, Ex. A).  He also checked the box for continuing action (*Id.*).  However, Mr. Reddix does not state specifically in the Charge that he was subjected to hostile work environment harassment.  In the response letter to the Charge, ADWS does not mention hostile work environment harassment (Dkt. No. 10, Ex. E).  In his complaint, however, Mr. Reddix clearly intends to bring such a claim and states "[t]hat subsequent to [Mr. Reddix] applying for the position of Area Operations Chief, [Mr. Reddix] has continued to be subjected to harassment and a hostile work environment."  (Dkt. No. 1, ¶ 23).  For the reasons explained in this Order, the Court grants summary judgment to ADWS on Mr. Reddix's claim based on the June 2016 interview for and selection of the position of Area Operations Chief; Mr. Reddix failed to exhaust his administrative remedies as to this claim.

Now, the Court determines that the EEOC and ADWS were not on notice based on statements in Mr. Reddix's Charge that he claimed hostile work environment following the 2016 incident.  Based on the record evidence before the Court, Mr. Reddix's claim for hostile work environment is dismissed because he failed to administratively exhaust that claim.

For the above reasons, the Court dismisses for failure to exhaust administrative remedies Mr. Reddix's claims relating to the June 2016 interview for and selection of the position of Area Operations Chief; Mr. Reddix's claim regarding reporting to a female supervisor who was a classification level lower than he was; Mr. Reddix's claim regarding job reclassification prior to

August 17, 2015; and Mr. Reddix's hostile work environment claim based on events after the June 2016 incident.

### C.      Remaining Title VII Claims

Certain Title VII claims remain.  Under Title VII, Mr. Reddix alleges claims for gender discrimination, failure to promote, retaliation, and job reclassification.  ADWS moves for summary judgment on all of these claims.  For the below reasons, the Court grants summary judgment in favor of ADWS on Mr. Reddix's remaining Title VII claims.

Title VII prohibits, among other things, employment discrimination against an individual "because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1).  Mr. Reddix can establish a *prima facie* claim of discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-05 (1973). *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012).  Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)).  "Thus, 'direct' refers to the causal strength of the proof, not whether it is 'circumstantial' evidence.  A plaintiff with strong direct evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial." *Id.*  However, "if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis,

including sufficient evidence of pretext." *Id.* This same type of analysis applies to Mr. Reddix's retaliation claim. *See Shirrell v. St. Francis Medical Center*, 793 F.3d 881, 887 (8th Cir. 2015); *Robinson v. American Red Cross*, 753 F.3d 749, 756 (8th Cir. 2014).

ADWS asserts that Mr. Reddix cannot show any evidence of unlawful discrimination or retaliation. "To be entitled to direct evidence analysis, the plaintiff must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision." *Rivers-Frison v. Se. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998) (internal quotation marks omitted). "[N]ot every prejudiced remark made at work supports an inference of illegal employment discrimination." *Id.* Rather, "[d]irect evidence of employment discrimination must have some connection to the employment relationship." *Id.* Direct evidence of discrimination is not established by mere "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Id.* (quoting *Beshears v. Asbill*, 930 F.2d 1348, 1354 (8th Cir. 1991)) (internal quotation marks omitted).

Based on the record evidence before the Court and construing that record evidence and all reasonable inferences in favor of Mr. Reddix, the Court determines that Mr. Reddix comes forward with no direct evidence of discriminatory animus by a decision maker at ADWS. The Court concludes that this is not a direct evidence case. Therefore, the Court will apply the three-part, burden-shifting framework of *McDonnell Douglas,* 411 U.S. at 802–04.

### 1. Gender Discrimination Based On Discipline And Job Duties

The Court will first address Mr. Reddix's claim for gender discrimination. In his complaint, Mr. Reddix alleges that he was discriminated against based on his gender in several

instances. First, Mr. Reddix alleges that he was written up for refusing to use his personal vehicle to conduct agency business, but a female employee used an agency vehicle for personal business and received no write-ups according to Mr. Reddix. Second, Mr. Reddix alleges that he had to make visits to female clients alone, after requesting that he not be sent to visit homes with female clients because such visits made him feel uncomfortable. ADWS contends that Mr. Reddix cannot establish a *prima facie* case for reverse gender discrimination.

Pursuant to the *McDonnell-Douglas* burden-shifting framework, Mr. Reddix bears the initial burden of establishing a *prima facie* case. *Torgerson*, 643 F.3d at 1046. If he establishes a *prima facie* case, the burden then shifts to ADWS to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* Mr. Reddix must then "produce evidence sufficient to create a genuine issue of material fact regarding whether [ADWS's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." *Id.* (quoting *Pope v. ESA Servs., Inc.,* 406 F.3d 1001, 1007 (8th Cir. 2005)). The burden to prove pretext "merges with the ultimate burden of persuading the court that [Mr. Reddix was] the victim of intentional discrimination." *Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)).

To establish a *prima facie* case of gender discrimination, Mr. Reddix must show: "(1) he is a member of a protected class; (2) he was meeting [ADWS's] legitimate job expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently." *Onyiah v. St. Cloud State University*, 684 F.3d 711, 716 (8th Cir. 2012).

Mr. Reddix's claims for gender discrimination are based on the theory of reverse gender discrimination. "In reverse discrimination cases, the plaintiff has also been expected to show that 'background circumstances support the suspicion that the defendant is that unusual employer who

discriminates against the majority.'" *Woods v. Perry*, 375 F.3d 671, 673 (8th Cir. 2004) (quoting *Duffy v. Wolle*, 123 F.3d 1026, 1036 (8th Cir. 1997)), *abrogated by Torgerson*, 643 F.3d 1046 (abrogating on other grounds). "However, '[j]ust because a reverse discrimination claimant cannot show the background circumstances necessary to trigger the *McDonnell Douglas* presumption does not inexorably mean that his employer has not intentionally discriminated against *him* . . . . An employee who is the victim of intentional discrimination in such circumstances, and who adduces sufficient evidence of that discrimination, should be permitted to proceed beyond the prima facie case stage of litigation.'" *Duffy*, 643 F.3d at 1036 (emphasis in original) (quoting *Notari v. Denver Water Dep't*, 971 F.2d 585, 590 (10th Cir. 1992)), *abrogated by Torgerson*, 643 F.3d 1046 (abrogating on other grounds). ADWS asserts that Mr. Reddix has failed to make a showing that ADWS is an unusual employer who discriminates against males.

According to Mr. Reddix's deposition, in 2013, Ms. Duncan told Mr. Reddix that she made the decision to fire Ms. Hill (Dkt. No. 10, Ex. A, at 6). Mr. Reddix also states that he never had any problems with his former supervisors, Phil Harris or Yolanda Williams (*Id.*, at 8). According to Ms. Duncan's affidavit, she was the person who initially hired Mr. Reddix to be TANF supervisor at ADWS and then promoted him to Local Office Manager (Dkt. No. 10, Ex. B, ¶ 3). Ms. Duncan also states that Mr. Reddix received probationary periods while working in both positions because he needed improvement in decision making, job knowledge and skill, and interpersonal relations (*Id.*). According to Ms. Duncan, she "constantly encouraged Mr. Reddix to improve his skills in these areas." (*Id.*). Regarding his termination from ADWS in January 2014, Ms. Duncan states that Mr. Williams made the decision to terminate Mr. Reddix and that she only communicated to Mr. Reddix Mr. Williams' decision (*Id.*, ¶ 5).

On October 7, 2015, Mr. Reddix raised concerns about performing home visits alone (Dkt. No. 10, Ex. E, at 3). In ADWS's letter in response to Mr. Reddix's charge, ADWS asserts that "given [Mr. Reddix's] physical stature and capabilities and training as a certified law enforcement officer, he could accomplish visits alone." (*Id.*). The ADWS letter also states that, "management considered [Mr. Reddix's] concerns and rescinded the decision that he was to conduct home visits by himself in an email from AOC Duncan on November 12." (*Id.*).

Based on the record evidence, construing the record evidence and all reasonable inferences in favor of Mr. Reddix, the Court finds that no reasonable juror could conclude that background circumstances support the suspicion that ADWS is that unusual employer who discriminates against the majority. The record shows that Mr. Reddix was hired and promoted by Ms. Duncan, one of his female supervisors during his employment, and that Ms. Duncan encouraged and helped Mr. Reddix when he was put on probation. Further, Ms. Duncan told Mr. Reddix that she fired a female employee. Mr. Reddix was supervised by both male and female supervisors at various times during his employment, and he states that he did not have a problem with those supervisors. Mr. Reddix also alleges that he was written up for refusing to use his personal vehicle to conduct agency business, but he contends that a female employee used an agency vehicle for personal business and was not disciplined. However, Mr. Reddix has not presented any record evidence to show that ADWS in fact disciplined male employees but not female employees for similar infractions. Further, when Mr. Reddix complained about doing home visits alone, the record evidence is that ADWS rescinded its previous decision to allow Mr. Reddix to do home visits alone. That previous decision was based on Mr. Reddix's law enforcement background and stature, according to ADWS. The Court finds that the cumulative effect of this record evidence shows that ADWS was not an unusual employer who discriminates against men. Mr. Reddix has

failed to present sufficient record evidence to survive ADWS's motion for summary judgment on this point.

To the extent Mr. Reddix bases his reverse gender discrimination claims on his allegations that he was written up for refusing to use his personal vehicle to conduct agency business while a female employee who used an agency vehicle for personal business received no write-ups or on his allegations that he had to make visits to female clients alone, after requesting that he not be sent to visit homes with female clients because such visits made him feel uncomfortable, the Court determines Mr. Reddix fails to establish a *prima facie* case. Aside from his allegation regarding refusing to use his personal vehicle to conduct agency business, Mr. Reddix has come forth with no record evidence to support this allegation. Mr. Reddix has not presented any record evidence to show that ADWS in fact disciplined male employees but not female employees for similar infractions. As for his claims about conducting home visits alone, the only record evidence presented is that ADWS instituted this practice initially due to Mr. Reddix's background in law enforcement and his stature but that, when he complained, ADWS reconsidered and changed its position. The record evidence on these points, even construed in Mr. Reddix's favor, does not establish a *prima facie* case of reverse gender discrimination.

Based on the record evidence before the Court, Mr. Reddix has failed to establish a *prima facie* case for his claims of reverse gender discrimination. For these reasons, the Court grants ADWS's motion for summary judgment with respect to Mr. Reddix's gender discrimination claims under Title VII based on his allegations of discipline and directions for home visits.

### 2.    Failure To Promote In August Or September 2015

The Court will next address Mr. Reddix's claim for failure to promote. In his complaint, Mr. Reddix alleges that ADWS refused to interview him and instead hired a female to fill the Field

Manager II position that was open in August 2015 (Dkt. No. 1, ¶ 16). ADWS contends that summary judgment should be granted in favor of ADWS on Mr. Reddix's claim for failure to promote. ADWS argues that Mr. Reddix cannot make out a *prima facie* case of gender discrimination because he cannot produce evidence proving that ADWS is an unusual employer who discriminates against the majority. ADWS further argues that it relied on non-discriminatory reasons unrelated to Mr. Reddix's gender when it made the decision not to interview Mr. Reddix for the Field Manager II position.

For claims based on the theory of failure to promote, the *McDonnell-Douglas* burden-shifting framework applies. "To raise a presumption of discrimination in failure-to-promote cases, a plaintiff must show that (1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-87 (1989)). Because Mr. Reddix presents his claim as a reverse gender discrimination claim, the Court will apply the rule from *Duffy* for a *prima facie* showing of reverse gender discrimination.

Specifically in regard to this claim, in his complaint, Mr. Reddix alleges that he applied for the position of Field Manager II on or about August 2015 but was never given an interview (Dkt. No. 1, ¶ 13). When making this claim, he points to his background and experience for the position, including his 20 years of experience as a supervisor, retired veteran, previous employment with ADWS as a Local Office Manager, a Bachelor of Science Degree in Mass Communications from Jackson State University, and previous experience working in corrections for 13 years (*Id.*, ¶ 15). Mr. Reddix alleges that Delois Hare, a female, was hired for the position despite lacking sufficient computer skills and having no knowledge of ADWS programs (*Id.*, ¶¶ 16, 18).

According to Ms. Duncan's affidavit, Mr. Reddix was the only male applicant, along with two females, for the vacant Field Manager II position in September 2015 (Dkt. No. 10, Ex. B, ¶¶ 6-7). Ms. Duncan only interviewed Delois Hare for the position and confirmed that she only interviews the most qualified applicants (*Id.*). According to Ms. Duncan, Ms. Hare was the best qualified applicant for the position because she worked for ADWS for approximately 36 years, including six years of experience as a Local Office Manager in the Helena Office, which was the exact position for which Ms. Duncan was hiring (*Id.*, ¶ 7).

Based on the record evidence before the Court, Mr. Reddix has failed to make a *prima facie* case that he is a member of a protected group based on *Woods* and *Duffy*. The record shows that both males, including Mr. Reddix himself, and females have been hired for various supervisor positions by ADWS. Also, for the September 2015 interview, Ms. Duncan only interviewed Ms. Hare for the position, declining to interview both Mr. Reddix and another female applicant. Mr. Reddix has not presented sufficient record evidence to show that his claim should be permitted to proceed. The Court concludes based on the record evidence, construing the record evidence and all reasonable inferences in favor of Mr. Reddix, that no reasonable juror could conclude that background circumstances support the suspicion that ADWS is that unusual employer who discriminates against the majority.

Regardless, ADWS has shown legitimate, nondiscriminatory reasons for its decision not to promote Mr. Reddix. *See Torgerson*, 643 F.3d at 1046. According to Ms. Duncan's affidavit, before Mr. Reddix was terminated in January 2014, she received complaints from clients and staff regarding Mr. Reddix (Dkt. No. 10, Ex. B, ¶ 4). Ms. Duncan received reports from TANF clients that "Mr. Reddix threatened to terminate their benefits if they did not perform favors for him." (*Id.*). "Staff also reported that they were uncomfortable being alone with Mr. Reddix." (*Id.*).

Regarding her decision not to interview Mr. Reddix for the open Field Manager II position in September 2015, Ms. Duncan states that, "[b]ased on my experience with Mr. Reddix in a manager's position, I determined that he was not the best qualified for the position." (*Id.*, ¶ 6).

Based on the record evidence before the Court, Ms. Duncan believed that Ms. Hare was the best qualified applicant for the open position in September 2015 and did not interview any other applicants. Further, based on Ms. Duncan's past work experience with Mr. Reddix in a supervisor position, she determined that he was not the best qualified for the open supervisor position. The Court finds that these are legitimate, nondiscriminatory reasons for not interviewing and promoting Mr. Reddix to the open Field Manger II position.

The burden now shifts to Mr. Reddix who must produce evidence sufficient to create a genuine issue of material fact regarding whether ADWS's proffered legitimate, nondiscriminatory reasons for not promoting him are mere pretext for intentional discrimination. *See Torgerson*, 643 F.3d at 1046. Based on the record before the Court at this time, Mr. Reddix has failed to produce the required evidence to dispute ADWS's proffered reasons and to establish pretext.

Therefore, the Court grants summary judgment in favor of ADWS with respect to Mr. Reddix's claim for failure to promote to the Field Manager II position under Title VII.

### 3. Retaliation Based On Failure To Interview In August Or September 2015

Mr. Reddix also claims retaliation under Title VII. Specifically, Mr. Reddix alleges in his complaint that, when ADWS refused to interview him for the Field Manger II position around August 2015, ADWS was acting in retaliation for Mr. Reddix having previously filed a grievance with ADWS to have his job reinstated after termination (Dkt. No. 1, ¶ 17). ADWS contends that it is entitled to summary judgment on Mr. Reddix's retaliation claims because his retaliation claims

are not based on a protected activity and because he cannot demonstrate a causal connection between the alleged events.

Under Title VII, an employer is prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). "The two clauses of this section typically are described, respectively as the opposition clause and the participation clause." *Brannum v. Missouri Dept. of Corr.*, 518 F.3d 542, 547 (8th Cir. 2008).

According to ADWS's response letter to the Charge Mr. Reddix filed, Mr. Reddix filed a grievance, after being terminated in January 2014, alleging that he was "unjustly terminated based on lack of due process and false accusations against him." (Dkt. No. 10, Ex. E., at 1-2). In the response letter, ADWS asserts that Mr. Reddix did not file a formal or informal complaint within ADWS and that he did not file a complaint with the EEOC alleging any Title VII violations (*Id.*, at 2). Mr. Reddix does not specify if his claim for retaliation falls under the opposition or participation clause. Therefore, the Court construes Mr. Reddix's retaliation claim under the opposition clause because, even though he filed a grievance after he was terminated, Mr. Reddix did not participate in an investigation, proceeding, or hearing under Title VII regarding his termination.

To establish a *prima facie* case of retaliation under Title VII, Mr. Reddix must show: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection existed between the protected activity and the adverse action. *Wilkie*, 638 F.3d at 955. "Retaliation must be the 'but for' cause of the adverse employment action." *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (internal revisions,

quotations, and citations omitted). "It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Blomker*, 831 F.3d at 1059 (citations omitted). If Mr. Reddix establishes a *prima facie* case of retaliation, the Court applies the *McDonnell Douglas* framework. *See Shirrell*, 793 F.3d at 887.

ADWS first contends that Mr. Reddix's claim of retaliation fails because he has not shown that he engaged in a statutorily protected activity. "To demonstrate the presence of protected opposition, a plaintiff must show a good faith reasonable belief that his employer engaged in a discriminatory employment practice." *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir. 1995) (internal citations omitted); *Brannum*, 518 F.3d at 547. The Eighth Circuit requires that Mr. Reddix demonstrate that his opposition is related to unlawful discrimination in some way. *See Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002) (finding that Plaintiff was not engaged in a protected activity by complaining to her employer about not receiving a raise and a promotion because Plaintiff did not attribute these failures to sex discrimination). Mr. Reddix must also demonstrate that his opposition was related to an employment practice. *See Evans*, 65 F.3d at 100-01 (finding that Plaintiff, a teacher, did not engage in protected opposition when he protested that a plan to diversify the student body of his school disregarded the needs of the current student body because Plaintiff failed to allege any discriminatory employment practice). For the purposes of Title VII retaliation, the Eighth Circuit Court of Appeals has found that protected activities include "[t]he filing of incident reports (and grievances), Charges of Discrimination, and this lawsuit . . . ." *Sutherland v. Mo. Dept. of Corr.*, 580 F.3d 748, 752 (8th Cir. 2009).

ADWS argues that Mr. Reddix never complained of employment discrimination prohibited by Title VII in the case filed against his previous employer or during the grievance filed against

ADWS for his January 2014 termination.  Mr. Reddix does not base his retaliation claim on allegations regarding his previous employer.  Instead, Mr. Reddix alleges only that ADWS refused to allow him to interview for the position of Field Manger II in August 2015 because he filed a grievance with ADWS to have his job reinstated after termination (Dkt. No. 1, ¶ 17).  Therefore, the Court limits its analysis to Mr. Reddix's grievance filed after being discharged from the ADWS in January 2014.

The Court does not have the grievance filed by Mr. Reddix in the record.  In his complaint, Mr. Reddix alleges that he filed a grievance in response to his termination by ADWS, without any details about the reason for his grievance (Dkt. No. 1, ¶ 17).  Other references in the record before the Court to Mr. Reddix's grievance are in the letter ADWS wrote in response to Mr. Reddix's EEOC Charge and in the release and settlement agreement signed by both parties in April 2014 to resolve the grievance (Dkt. No. 10, Ex. C, E).  The ADWS letter from April 29, 2016, states that Mr. Reddix's grievance letter asserted that he was terminated for "lack of due process and false accusations against him."  (Dkt. No. 10, Ex. E, at 1-2).  The release and settlement agreement states that Mr. Reddix "has expressed the belief that he was wrongfully discharged, and has filed a grievance to that effect."  (Dkt. No. 10, Ex. C).  The agreement also states that "the attorney for [Mr. Reddix] has advised [A]DWS that should he not prevail at the administrative level, that he has been instructed by his client to proceed with a Title VII or Civil Rights Complaint in federal or state court."  (*Id.*).

The Court construes the language in the release and settlement in favor of Mr. Reddix at this stage of the proceeding, as it is required to do.  Although this evidence admittedly is thin, the Court concludes that Mr. Reddix's grievance may have been related to protected activity under Title VII because his attorney said that he was prepared to file a lawsuit pursuant to Title VII or

the Civil Rights Act. For this reason, the Court finds that Mr. Reddix has made a sufficient *prima facie* showing of the element of engaging in a statutorily protected activity.

ADWS does not dispute that Mr. Reddix suffered a materially adverse action when Ms. Duncan did not promote him to the open Field Manager II position in September 2015, which satisfies the second element of the *prima facie* case.

To establish the third element of the *prima facie* case of retaliation, Mr. Reddix must demonstrate that a causal connection existed between the protected activity and the adverse action. Generally, "more than a temporal connection is required to present a genuine factual issue on retaliation." *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005). As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation. *Sims v. Sauer–Sundstrand Co.*, 130 F.3d 341, 343 (8th Cir. 1997). The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months. *See, e.g.*, *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 645 (8th Cir. 2009) (a temporal gap of seven months "not sufficiently contemporaneous" to indicate a causal connection); *Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008) (a six-month gap too long to give rise to inference of causal connection); *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim and that a two-week interval was 'sufficient, but barely so.'") (internal citations omitted).

Here, ADWS argues that there is no causal connection between Mr. Reddix's grievance in 2014 and the failure to interview and promote him in September 2015. Mr. Reddix filed his grievance at some point after January 10, 2014 (Dkt. No. 10, Ex. E, at 1-2). After Mr. Reddix was terminated and filed his grievance, ADWS reinstated him pursuant to the settlement agreement

(Dkt. No. 10, Ex. E). Mr. Reddix applied for the Field Manger II position around August 2015 (Dkt. No. 10, Ex. B, ¶ 6). Mr. Reddix applied for the open position approximately one year and eight months after he filed the grievance. Mr. Reddix has not presented any evidence to show that there is a causal connection between his 2014 grievance and the September 2015 interview process. Based on the break in time between his termination and his applying for the open position, and the fact that ADWS rehired Mr. Reddix in the interim after discharging him in 2014, the Court finds that Mr. Reddix has failed to present sufficient record evidence that a causal connection existed between the protected activity and the adverse action so as to survive ADWS's motion for summary judgment.

Even if Mr. Reddix could establish a *prima facie* case of retaliation, ADWS presents record evidence of legitimate, nondisriminatory reasons for its decision not to interview or hire Mr. Reddix for the open position in 2015, specifically Ms. Duncan's explanation in her affidavit. Mr. Reddix has not presented sufficient record evidence to demonstrate that these proffered reasons were pretext and that retaliation was the but-for reason he was not interviewed or hired for the open position in 2015. For all of these reasons, the Court grants summary judgment in favor of ADWS with respect to Mr. Reddix's retaliation claim under Title VII.

### 4. Job Transfer And Reclassification In October 2015

Mr. Reddix also brings a claim for gender discrimination based on reclassification. Mr. Reddix alleges that, on or around October 2015, he was reassigned to the Helena Office (Dkt. No. 1, ¶ 19). Mr. Reddix further alleges that Ms. Duncan reassigned him duties that were not in accordance with his job title of Program Field Audit Specialist (*Id.*). Mr. Reddix maintains that Ms. Hare assigned him responsibilities that were outside the scope of his position and stated that those duties were "a man's job." (*Id.*).

According to the Supreme Court, to prove a claim for discrimination based on an adverse employment action, a plaintiff must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations and citations omitted). In *Burlington*, the Supreme Court affirmed a jury's verdict that found reassignment of duties was an adverse employment action where the previous job had more prestige, was considered better, and was less arduous. *Id.*, at 70.

The Eighth Circuit has held that evidence of a "considerable downward shift in skill level required to perform [the employee's] new job responsibilities" is an adverse employment action. *Turner v. Gonzales*, 421 F.3d 688, 697 (8th Cir. 2005) (quoting *Meyers v. Neb. Health & Human Serv.*, 324 F.3d 655, 660 (8th Cir. 2003)). The Eighth Circuit has also held that "[a] transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions or a diminution in the transferred employee's title, salary, or benefits." *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 919 (8th Cir. 2000). Once Mr. Reddix has proven a *prima facie* case of discrimination based on reclassification, the burden shifts to the ADWS to articulate a legitimate, nondiscriminatory reason for its actions, and then the burden shifts back to Mr. Reddix to show that the ADWS's reason was pretextual. *See Turner*, 421 F.3d at 697-98.

According to ADWS's letter in response to the Charge, on October 7, 2015, Mr. Reddix "took issue with being assigned duties also performed by a Workforce Specialist, a C-114." (Dkt. No. 10, Ex. E, at 3). ADWS further states in its letter that Ms. Duncan and Ms. Hare then discussed Mr. Reddix's responsibilities with him both in person and by email (*Id.*). According to ADWS, Ms. Duncan and Ms. Hare "explained to Mr. Reddix that he was being assigned duties within his

capabilities to handle and that all staff are asked to perform duties on cases originally assigned to others." (*Id.*). According to the Release and Settlement Agreement, ADWS agreed to employ Mr. Reddix "at a grade level equivalent to the position held by him prior to having been made an office manager . . . and work with OPM to pay him at a rate equal to, or as close as possible, to his exit salary." (Dkt. No. 10, Ex. C, at 1).

Mr. Reddix has not presented any record evidence regarding his reclassification in October 2015, beyond the allegations in his complaint. Based on the record evidence before the Court, construing that evidence and all reasonable inferences in favor of Mr. Reddix, in October 2015, Mr. Reddix received a salary and benefits that were at the same level as he received in 2014. Mr. Reddix has not shown that his title changed when he was transferred to the Helena Office in October 2015 nor has he explained how any acts he contends occurred constituted a hardship. Further, even though Mr. Reddix alleges that he was given assignments that were not performed by employees of his classification after the transfer, Mr. Reddix does not explain exactly what those responsibilities were or why they were a significant change in working conditions. Further, ADWS presents record evidence to suggest that assignments like this were expected of and assigned to all ADWS employees. For these reasons, the Court finds that Mr. Reddix fails to make a *prima facie* showing of gender discrimination based on reclassification and transfer. The Court grants ADWS summary judgment on this claim.

### IV.     Motion To Deem Admitted And For Dismissal

On July 3, 2018, ADWS filed a motion to deem admitted and for dismissal (Dkt. No. 13). ADWS asserts that Mr. Reddix did not file a response to ADWS's motion for summary judgment by the required deadline, June 15, 2018 (*Id.*, ¶ 3). Based on Mr. Reddix's failure to respond, ADWS requests that the Court deem admitted the facts presented in ADWS's statement of facts in

support of its motion for summary judgment and that this case be dismissed with prejudice (*Id.*, ¶ 5).  Mr. Reddix filed a response to ADWS's motion to deem admitted and for dismissal (Dkt. No. 19).  On July 12, 2018, Mr. Reddix filed a motion for extension of time to respond to ADWS's motion for summary judgment, which the Court granted (Dkt. Nos. 14, 16).  Mr. Reddix then filed a response in opposition to the pending motion for summary judgment (Dkt. Nos. 17, 18).  Because the Court granted Mr. Reddix's motion for extension of time, and Mr. Reddix responded to the motion for summary judgment, the Court denies ADWS's motion to deem admitted and for dismissal (Dkt. No. 13).

## V.       Conclusion

For the foregoing reasons, the Court denies ADWS's motion to deem admitted and for dismissal and grants ADWS's motion for summary judgment (Dkt. Nos. 10, 13).  The Court dismisses Mr. Reddix's claims; the relief requested is denied.

It is so ordered, this the 31st day of March, 2019.

Kristine G. Baker
United States District Judge